No. 87,384

STATE OF KANSAS, *Appellee,* v. RICHARD R. KENDALL, JR.,
*Appellant.*
(58 P.3d 660)

Opinion filed December 6, 2002.

*Sandra M. Carr*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with her on the brief for appellant.

*Keith E. Schroeder*, district attorney, argued the cause, and *F. Terry Bruce*, assistant district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

Six, J.: Richard R. Kendall, Jr., appeals his felony conviction under K.S.A. 1999 Supp. 8-1567 of driving under the influence (DUI), his convictions of driving while license suspended and refusing a preliminary breath test, and his sentence. The issues are whether: (1) the trial court erred in its response to a jury question regarding the definition of driving and, if error, was the error harmless; (2) the trial court erred in allowing a witness to give an opinion as to whether Kendall was under the influence of alcohol; and (3) the use of Kendall's two prior DUI convictions to change the classification of the instant DUI from a misdemeanor to a felony and increase his sentence violates *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).

We hold that (1) although the trial court's response to the jury's question was incorrect, the error was harmless; (2) the trial court did not err in admitting the officer's testimony concerning Kendall's condition; and (3) the use of Kendall's two prior DUI convictions to change the classification of the DUI here from a misdemeanor to a felony does not violate *Apprendi*.

We affirm Kendall's convictions and his sentence.

## FACTS

On April 8, 2000, Officer Ogburn found Kendall slumped over the steering wheel of his truck, which was resting in the middle of a public street in a residential neighborhood. The truck's motor was running, and Kendall was wearing his seat belt. The truck's headlights and brake lights were on. Kendall appeared to be asleep. He had one foot on the brake. Officer Ogburn testified that the truck was in neutral.

Backup officers arrived and Officer Ogburn reached into the truck, turned off the engine, and took the keys. Kendall did not wake up. The officer shook Kendall repeatedly. When Kendall

woke up, he said, "I'm not driving." The officer smelled alcohol and asked Kendall to step out. Kendall tried to get out without unfastening his seat belt. Officer Ogburn testified that Kendall was having problems with balance and coordination.

Officer Ogburn asked Kendall to perform field sobriety tests. The officer testified that Kendall recited the alphabet to the letter Q. Kendall stopped and inquired if he should continue, then recited the rest of the alphabet. The officer testified that Kendall's speech was noticeably slurred and he could smell alcohol on Kendall's breath.

Officer Ogburn asked Kendall to: (1) stand on one leg for 15 seconds (Kendall tried twice but stood on one leg for only 1 second each time); (2) walk a straight line heel-to-toe with his hands at his side (the officer testified that Kendall used his arms to steady himself and he was staggering; the officer stood beside him throughout the test because he was afraid Kendall would fall); and (3) take a preliminary breath alcohol test (Kendall refused).

The officer placed Kendall under arrest. Kendall refused to turn around and put his hands behind his back, and another officer turned him around. Officer Ogburn described Kendall at that point as "not agreeable." Once taken to the law enforcement center, Kendall again refused to take a breath alcohol test.

Kendall was charged with DUI, driving while license suspended, and refusing a preliminary breath test. Kendall's defense at trial was that he had not been drinking and he did not drive the truck.

### Kendall's Testimony at Trial

Kendall testified that the day he was arrested, he had worked 14½ hours at his construction job, ate dinner, slept for a few hours, then went to a party with a woman who was his friend. The friend drove his truck to the party because his license was suspended. Kendall said he was tired, and he and his friend eventually left the party. On the way home, he and his friend argued as she drove. She threw an alcoholic drink in his face, stopped the truck, and walked away. He slid over into the driver's seat and fastened his seat belt, unsure of what to do. He said he tried to lick the alcohol

off his hands and the "[n]ext thing I know the officer's waking me up."

### The Sentence

Kendall was convicted of each crime. His motions for judgment of acquittal and new trial were denied. His criminal history includes seven DUIs. Only two convictions occurred within the 5 years preceding the instant DUI. Under K.S.A. 1999 Supp. 8-1567(k)(3), only those two may be considered in determining whether the instant DUI was a first, second, third, or fourth offense. He was sentenced to 12 months' probation, with an underlying prison term of 12 months. As a condition of his probation, he was ordered to serve 5 days in jail and 85 days under work release supervision.

### DISCUSSION
### The Jury's Question

Kendall argues that the trial court erred in its response to a jury question that asked for a legal definition of driving. Kendall contends that the trial court's answer to the jury's question was a misstatement of the law. He also asserts that the answer relieved the State of its burden to prove an element of the crime and deprived him of a fair trial.

K.S.A. 22-3420(3) says:

"After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of the law shall be given, or the evidence shall be read or exhibited to them in the presence of the defendant, unless he voluntarily absents himself, and his counsel and after notice to the prosecuting attorney."

The trial court has considerable discretion in determining the substance of its response to jury questions during deliberations regarding matters of law or evidence in the case. *State v. Robbins,* 272 Kan. 158, 168, 32 P.3d 171 (2001). Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Lopez,* 271 Kan. 119, 125, 22 P.3d 1040 (2001).

Further, we have said: "The important consideration is that the jury be properly instructed on the essential issues presented at the trial, and this is particularly true in a criminal proceeding when the question presented by the jury involves the basic elements of the criminal offense on which the defendant is being tried." *State v. Morris,* 255 Kan. 964, 985-86, 880 P.2d 1244 (1994).

Before deliberations, the jury was instructed on the crime of DUI. Instruction No. 7 said:

"The defendant is charged with the crime of operating a vehicle while under the influence of alcohol. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant drove a vehicle;

"2. That the defendant, while driving, was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle; and

"3. That this act occurred on or about the 8th day of April, 2000, in Reno County, Kansas."

The instruction was taken directly from PIK Crim. 3d 70.01. The jury was also instructed on the alternative theory of attempted DUI.

Instruction No. 8, taken from PIK Crim. 3d 70.01-B, said:

"The defendant is charged in the alternative with operating or attempting to operate a vehicle while under the influence of alcohol. You are instructed that the alternative charges constitute one crime.

"You should consider if the defendant is guilty of operating or attempting to operate a vehicle while under the influence of alcohol and sign the verdict upon which you agree."

Instruction No. 9 said:

"The defendant is charged with the crime of operating a vehicle while under the influence of alcohol. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendant attempted to drive a vehicle;

"2. That the defendant, while attempting to drive, was under the influence of alcohol to a degree that rendered him incapable of safely driving a vehicle; and

"3. That this act occurred on or about the 8th day of April, 2000, in Reno County, Kansas."

During deliberations, the jury submitted two questions to the trial court. First, the jury asked: "Was Richard Kendall's truck a standard transmission or automatic transmission?" The trial court,

upon the agreement of the parties, answered: "You must rely on your collective recollection of the testimony and evidence, and the instructions as a whole."

Second, the jury asked: "Is there a legal definition of driving?" After hearing arguments of counsel, the court answered: "The words 'to drive' and 'operate' are synonymous under Kansas law. Movement of the vehicle is not required. Again, the jury should refer to the answer to Question No. 1 above." At trial, Kendall took issue only with the second sentence of the answer.

Kendall argues that the trial court's statement that "[m]ovement of the vehicle is not required" is a misstatement of the law. We agree that it applies as to operation, but movement is not required for attempted operation.

K.S.A. 1999 Supp. 8-1567(a) says no person shall "operate or attempt to operate" any vehicle within this state while under the influence of alcohol.

We explored the meaning of "operate" under K.S.A. 8-1567 in *State v. Fish*, 228 Kan. 204, 612 P.2d 180 (1980). Fish was discovered in his car parked off the highway at a community trash receptacle. He was asleep in the front seat. The motor was running and the car was in park. There was an open liquor bottle on the front seat. A highway patrol trooper woke Fish and suspected that Fish was drunk. Fish was charged with DUI under K.S.A. 1979 Supp. 8-1567(a).

The State appealed on a question reserved. We described the State's argument as follows:

"On this appeal, the State requests this court to hold that there is a distinction between the terms 'to operate' and 'to drive' as used in K.S.A. 1979 Supp. 8-1567(a) and (b). The State maintains that the word 'operate' is a broader term than is the term 'drive' and includes acts of a person in a motor vehicle not involving the actual driving of the vehicle. Thus, the State argues, an intoxicated person, who starts the motor of an automobile and, thereafter, remains seated in the vehicle, has violated the provisions of K.S.A. 1979 Supp. 8-1567(a). The State points out there is no Kansas law defining the term 'to operate' in the context of this statute." 228 Kan. at 205.

In *Fish*, we examined other traffic laws and analyzed the legislative intent behind 8-1567(a) and concluded:

"[T]he word *'operate'* as used in section (a) of that statute should be construed to mean *'drive,'* thus requiring some evidence, either direct or circumstantial, that the defendant drove the automobile while intoxicated in order for the defendant to be convicted under that section. Proof of driving does not require an eyewitness to the driving. It may be shown by circumstantial evidence as was done in *State v. Dill,* 182 Kan. 174, and *State v. Hazen,* 176 Kan. 594." 228 Kan. at 210.

From *Fish,* we derive two things: (1) to operate a vehicle as set forth in 8-1567(a) means to drive it; and (2) in order to be convicted of operating a vehicle under the influence, there must be some evidence, direct or circumstantial, that the defendant drove the vehicle. Nothing in *Fish* says that movement of the vehicle is not required to convict a defendant under 8-1567(a). In fact, in *Fish,* we noted: "The Kansas cases on the subject have assumed that proof of driving or movement of the vehicle is required in order to sustain a conviction." 228 Kan. at 205-06.

The State here counters that the definition of "operate" is much broader than the definition of "drive" and encompasses other activities involving a vehicle, including sitting inside it with the engine running or fastening a seat belt. The State insists that *Fish* was wrongly decided. It also points to K.S.A. 1999 Supp. 8-2,128(j), which defines "drive" to mean "drive, operate or be in physical control of a motor vehicle." The State characterizes this statute as a legislative response to *Fish.* K.S.A. 8-2,128 was enacted in 1989, 9 years after *Fish,* and is part of the Uniform Commercial Driver's License Act, K.S.A. 8-2,125 *et seq*. The statute makes clear that the definitions it contains apply to the Commercial Driver's License Act. K.S.A. 1999 Supp. 8-2,128 makes no difference here.

More to the point, K.S.A. 8-1567 has been amended since our decision in *Fish.* The DUI statute at issue in *Fish,* K.S.A. 1979 Supp. 8-1567, prohibited the operation of any vehicle by a person who was under the influence of alcohol. The statute was amended in 1985 to prohibit the operation *or attempt to operate* any vehicle by a person under the influence of alcohol. L. 1985, ch. 48, sec. 9. Thus, the current version of the DUI statute at issue here encompasses both those accused of actually driving while under the influence and those who merely tried but failed, with no election required. Movement of the vehicle is not required in order to con-

vict a defendant of DUI under the theory that defendant *attempted* to operate the vehicle.

Here, the jury was separately instructed on both theories of guilt under K.S.A. 1999 Supp. 8-1567(a): (1) operating a vehicle while under the influence of alcohol and (2) attempting to operate a vehicle while under the influence of alcohol. The jury was given three options in the verdict forms:

"VERDICT

Count One-Driving Under the Influence

"We, the jury, do upon our oaths find the defendant guilty of Driving While Under the Influence by driving a motor vehicle.

Presiding Juror

"We, the jury, do upon our oaths, find the defendant guilty of Driving while Under the Influence by attempting to drive a motor vehicle.

Presiding Juror

"We, the jury, do upon our oaths, find the defendant not guilty.

Presiding Juror"

The jury asked for a legal definition of driving. The trial court responded: "Movement of the vehicle is not required." This was not a correct statement of the law. It is true that movement of the vehicle is not required to convict a defendant of DUI under the theory that he *attempted* to operate the vehicle. However, nothing in *Fish* or other pertinent Kansas law says that the definition of "driving" does not require movement of the vehicle.

The trial court's response to the jury's question about the legal definition of driving was a misstatement of the law. Given the fact that Kendall's defense was anchored to his claim that he did not drive the truck, the trial court's response to the jury's question was erroneous.

The question becomes whether the trial court's error was harmless. Errors that do not affirmatively cause prejudice to the substantial rights of the defendant do not require reversal when substantial justice has been done. *State v. Clark*, 263 Kan. 370, 376, 949 P.2d 1099 (1997).

The jury convicted Kendall on the theory that he operated a vehicle while under the influence of alcohol. Contrary to the trial court's statement, proof that Kendall drove (or moved) the vehicle was required to sustain the conviction under that theory.

However, proof that Kendall drove (or moved) the vehicle was not required to convict Kendall of DUI on the theory that he *attempted* to operate a vehicle while under the influence of alcohol. Even if we assume the trial court's statement led the jury astray and resulted in the jury's conclusion that Kendall—by sitting in his truck in the middle of the street with the engine running and his seat belt fastened—operated the vehicle, the trial court's statement does not change the fact that there was ample evidence that Kendall *attempted* to operate the vehicle.

Kendall's defense at trial was that a woman drove his truck, then abandoned it in the middle of the street, prompting Kendall to move to the driver's seat, buckle his seat belt, put his foot on the brake, and fall asleep with the engine running. Kendall claimed he neither drove the truck nor attempted to drive it. The jury either believed him or it did not. Kendall's general denial applied equally whether the jury believed he actually moved the vehicle or just attempted to move it. At oral argument, Kendall's attorney reiterated that Kendall claimed he did not drive. The attorney also stated there was no evidence that he attempted to drive.

In finding Kendall guilty of DUI under the theory that he operated the vehicle, the jury rejected Kendall's general denial. The "no movement required" statement from the trial court impacted only the jury's choice between guilt based on operation (movement required) or guilt based on the attempt to operate (no movement required). It did not impact the jury's decision whether to accept or reject Kendall's defense.

Where a defendant's theory of the case was not prejudiced by an erroneous instruction, the error is harmless. See *State v. Shumway*, 30 Kan. App. 2d 836, 50 P.3d 89, 99, *rev. denied* 274 Kan. 1117 (2002) (any error in giving a lesser included instruction to the jury without adequate notice to defendant was harmless given his denial of involvement in the incident). The same basic reasoning applies here.

Kendall was found in the driver's seat of his truck with the engine running, the headlights on, his foot on the brake, and his seat belt fastened. The truck was sitting in the middle of a public street in a residential neighborhood. Even if the jury believed Kendall did not move his vehicle while under the influence of alcohol, there was sufficient evidence to convict Kendall of DUI on the alternative theory that he attempted, but failed, to operate the truck.

The trial court's answer to the jury's question, while error, was harmless.

### The Testimony of Officer Henderson

Kendall next argues that the trial court erred in allowing Officer Henderson, who arrived at the scene after Officer Ogburn, to testify that, in his opinion, Kendall was under the influence of alcohol. Kendall objected to the testimony at trial. He argues that the testimony was tantamount to an opinion regarding his guilt or innocence and was a determination that should have been left to the jury.

The admissibility of evidence lies within the sound discretion of the trial court. Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Villanueva*, 274 Kan. 20, 49 P.3d 481, 487 (2002).

K.S.A. 60-456 governs the admissibility of opinion testimony, and says:

"(a) If the witness is not testifying as an expert his or her testimony in the form of opinions or inferences is limited to such opinions or inferences as the judge finds (a) may be rationally based on the perception of the witness and (b) are helpful to a clearer understanding of his or her testimony.

"(b) If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness.

"(c) Unless the judge excludes the testimony he or she shall be deemed to have made the finding requisite to its admission.

"(d) Testimony in the form of opinions or inferences otherwise admissible under this article is not objectionable because it embraces the ultimate issue or issues to be decided by the trier of the fact."

At trial, the State offered Officer Henderson's opinion as either expert or lay testimony. It matters little, since either type of testimony is acceptable even though it embraces the ultimate issue to be decided by the jury.

In *City of Dodge City v. Hadley,* 262 Kan. 234, 936 P.2d 1347 (1997), we considered whether the trial court abused its discretion in admitting the opinion testimony of police officers on the issues of whether Hadley was intoxicated and whether he could safely operate a vehicle. We found no abuse of discretion, observing that the officers did not express an opinion that Hadley was guilty of the crime. Further, we noted that even if admitting the evidence was error, it was harmless, pointing out that Hadley had a bench trial, not a jury trial, and the other evidence against him was overwhelming. 262 Kan. at 239-42.

Here, as in *Hadley,* Officer Henderson did not opine that Kendall was guilty of a crime. Officer Henderson simply stated that, in his opinion, Kendall was under the influence of alcohol. Further, the testimony of Officer Ogburn provided ample evidence on the subject. Officer Ogburn testified without objection that, given the smell of alcohol, slurred speech, bloodshot eyes, and Kendall's poor balance, he believed Kendall had been drinking and was probably intoxicated or, at least, impaired.

The trial court did not abuse its discretion in admitting the opinion testimony of Officer Henderson.

### The *Apprendi* Issue

Kendall argues that the use of his two prior DUI convictions to change the classification of the instant DUI from a misdemeanor to a felony and increase his sentence violates *Apprendi v. New Jersey,* 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000). We disagree.

K.S.A. 1999 Supp. 8-1567(a) prohibited the operation or the attempt to operate any vehicle in this state while under the influence of alcohol. Subsection (d) provided that upon a first DUI conviction, a person shall be guilty of a class B nonperson misdemeanor and sentenced to not less than 48 consecutive hours or more than 6 months of imprisonment or, in the court's discretion,

100 hours of public service, and fined not less than $200 or more than $500.

Subsection (e) provided that upon a second conviction, a person shall be guilty of a class A nonperson misdemeanor and sentenced to not less than 90 days or more than 1 year of imprisonment and fined not less than $500 or more than $1,000. The person must serve at least 5 consecutive days' imprisonment but, after 48 consecutive hours' imprisonment, the balance may be served on work release.

Subsection (f) stated that upon a third or subsequent conviction, a person shall be guilty of a nonperson felony and sentenced to not less than 90 days or more than 1 year of imprisonment and fined not less than $1,500 or more than $2,500. The person must serve at least 90 days' imprisonment and, after 48 consecutive hours' imprisonment, the balance may be served on work release.

Kendall was sentenced under K.S.A. 1999 Supp. 8-1567(f). He argues that under *Apprendi,* the fact that he had two prior DUI convictions must be proven to a jury beyond a reasonable doubt before that fact can be used to change the classification of his crime from a misdemeanor to a felony and increase his sentence. He contends that because such a jury finding was absent here, his Sixth and Fourteenth Amendment rights have been violated and his sentence must be vacated and the case remanded for resentencing.

Kendall's argument raises a question of law over which we have unlimited review. *State v. Crow,* 266 Kan. 690, 694, 974 P.2d 100 (1999).

The United States Supreme Court in *Apprendi* held: *"Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Emphasis added.) 530 U.S. at 490.

In *State v. Ivory,* 273 Kan. 44, 41 P.3d 781 (2002), we analyzed the prior conviction exception to the *Apprendi* rule. We held that *Apprendi* did not require a jury finding of the fact of a prior conviction beyond a reasonable doubt in order for the prior conviction to be included in Ivory's criminal history score under the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.* We also rejected

the argument that *Almendarez-Torres v. United States,* 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), the source of the prior conviction exception, had been called into doubt by *Apprendi. Ivory,* 273 Kan. at 46-48.

We took *Ivory* one step further in *State v. Graham,* 273 Kan. 844, 46 P.3d 1177 (2002), where Graham raised an *Apprendi* objection to the use of his prior drug convictions to increase the severity level of his drug crimes and his sentence under K.S.A. 2001 Supp. 65-4160(c). We compared the use of a prior conviction to increase the criminal history score to the use of a prior conviction to increase the severity level of the crime, both of which increased the overall sentence. We concluded that the net effect was the same, and the use of Graham's prior drug convictions to increase his sentence did not implicate *Apprendi.* 273 Kan. at 854-55.

Kendall complains of the fact that his two prior convictions of DUI were used to change the classification of the instant DUI from a misdemeanor to a felony and increase his sentence. The use of the prior convictions here, as in *Ivory* and *Graham,* falls squarely within the prior conviction exception of *Apprendi.* Kendall's sentence is constitutionally sound.

Affirmed.