(257 P.3d 1266)
No. 103,646

STATE OF KANSAS, *Appellee*, v. EDWARD ADAME, *Appellant*.

Opinion filed June 24, 2011.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*David Maslen*, assistant county attorney, and *Steve Six*, attorney general, for appellee.

Before MALONE, P.J., PIERRON and ARNOLD-BURGER, JJ.

PIERRON, J.: Edward Adame appeals from his jury conviction for driving under the influence of alcohol (DUI) after a fourth offense, the district court's imposition of court-appointed attorney fees, and the fines imposed for his DUI, driving while his license was suspended, and failure to provide proof of insurance.

In November 2008, Dalenia Beckwith (now Dalenia Adame) was having problems with her vehicle repeatedly stalling or dying. She testified she was leaving McDonalds when her vehicle died and would not restart. Dalenia called Adame at work and left him a message that she was having car trouble, and she needed him to come to McDonalds. Adame's coworker, Mike, drove Adame to McDonalds and dropped him off. Although Dalenia testified Adame's attempts to start the vehicle were unsuccessful, she had Mike take her home. Mike returned to work. Dalenia was home for only 15 to 20 minutes when she asked Mike to take her back to McDonalds. Dalenia did not explain why Adame was left behind with a disabled vehicle and why both she and Mike returned to McDonalds 15 to 20 minutes later. In any event, when Dalenia returned to McDonalds, she discovered Adame was under arrest.

Adame testified he was at work when he got a message from Dalenia stating her vehicle had broken down and she needed help getting it off the highway. According to Adame, Dalenia's vehicle died on 11th Street, in front of McDonalds. When Adame could not get the vehicle started, he tried to get it off the road by sticking his leg out of the open door and pushing it along with his foot. Adame testified he first tried pushing the vehicle into the Mc-Donalds' parking lot, but the entrance was too steep. He further testified a McDonalds' employee told him he could not leave the vehicle in the parking lot, so he pushed the vehicle back into the street. Despite testifying her vehicle had died on the street in front of McDonalds, Dalenia also testified it had died in the McDonalds' parking lot, and an employee told her she had to move it.

Kevin West happened upon the disabled vehicle when it was halfway out of the McDonalds' parking lot. West realized Adame was having trouble with the vehicle because he was pushing it backwards with his foot outside the driver's door. West stopped and turned on his flashers. Adame, however, kept pushing the vehicle backwards towards West's truck. West backed up as far as he could and honked his horn, but Adame continued backwards until he ran into the front bumper of West's truck.

Officers Darin Daily and Kevin Rucker responded to the scene of the noninjury accident. Officer Rucker spoke with Adame and noticed an odor of alcohol on Adame's breath. When he asked Adame for proof of vehicle insurance, Adame handed Officer Rucker a stack of papers from the glove box. When Officer Rucker returned the papers to Adame telling him the receipts and other papers were not proof of insurance, Adame thumbed through his wallet and gave Officer Rucker his library card. Officer Rucker was later informed by Dalenia that there was no insurance on the vehicle. Dispatch informed Officer Rucker that Adame's license was suspended. Adame was arrested. Officer Rucker did not conduct field sobriety tests at the scene because he felt the area was not safe to conduct the tests. At the police station, however, Adame became agitated and refused to submit to a breath test. In addition to the odor of alcohol, Officer Rucker noted Adame had bloodshot eyes, slurred speech, difficulty communicating, and he admitted to

consuming alcohol or drugs. Officer Rucker testified Adame told him he had driven the vehicle from Elm Street into the parking lot of McDonalds when it died in the parking lot. Based on Officer Rucker's experience, it was his opinion Adame was under the influence of alcohol to the point he was unable to safely operate a motor vehicle.

While at the scene, Officer Daily spoke with Dalenia. Dalenia told Officer Daily her vehicle had broken down in the 1000 block of Elm Street, and she had called Adame for help. Dalenia did not tell Officer Daily whether Adame was able to start the vehicle. Officer Daily later came into contact with Adame at the police station. He also noted Adame was upset and belligerent, Adame had an odor of alcohol, and his eyes were bloodshot. It was Officer Daily's opinion Adame was intoxicated to the point he could not safely operate a vehicle.

Adame was charged with felony DUI under K.S.A. 2008 Supp. 8-1567(a)(3), a fourth offense, driving while his license was suspended under K.S.A. 2008 Supp. 8-262, and failing to provide proof of vehicle liability insurance under K.S.A. 2008 Supp. 40-3104. After a jury trial, he was convicted as charged. The district court sentenced Adame to 10 months' imprisonment and fined him $2,500 for the felony DUI conviction. Adame was also fined $200 for driving while his license was suspended and $300 for having no proof of liability insurance. The court imposed a 6-month jail term for each of the misdemeanor convictions to run concurrent with the DUI prison term. The court further assessed court costs and an unspecified amount of court-appointed attorney fees. Adame was later assessed $1,200 in attorney fees in the journal entry of sentencing.

Adame argues he was charged with alternative means of DUI and the jury was instructed in accordance with the charge; however, the district court gave no unanimity instruction, violating his right to a unanimous jury verdict. The parties agree the question of jury unanimity presents a question of law with unlimited review. See *State v. Stevens*, 285 Kan. 307, 312, 172 P.3d 570 (2007).

Although Adame was charged with alternative means of committing a DUI and the jury was instructed on alternative means,

the verdict form merely offered the option of finding Adame guilty of driving under the influence. In other words, there was no language of attempt in the verdict form. Although it could be argued the verdict form renders the issue moot—there was jury unanimity on guilt and the means of committing DUI—the parties do not mention the verdict form and, therefore, the arguments will be addressed as briefed.

Adame was charged with violating K.S.A. 2008 Supp. 8-1567(a)(3), which provides: "No person shall operate or attempt to operate any vehicle within this state while . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." By its own terms, the statute provides more than one means to commit a DUIoperating or attempting to operate a vehicle. In an alternative means case, there must be jury unanimity as to guilt for the single crime charged, but not as to the particular means by which the crime was committed. *Stevens*, 285 Kan. at 314. The alternative means issue is resolved by determining whether sufficient evidence supports both means of committing the crime, thus triggering a standard of review more deferential to the State. 285 Kan at 316.

"When the sufficiency of the evidence is challenged in a criminal case, this court reviews all the evidence in the light most favorable to the prosecution to determine whether the court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Trautloff*, 289 Kan. 793, 800, 217 P.3d 15 (2009).

When the evidence is viewed in this light, a rational factfinder could have found Adame guilty of both operating and attempting to operate a motor vehicle under the influence of alcohol. Operation of a vehicle may be established by either direct or circumstantial evidence. *State v. Fish*, 228 Kan. 204, 210, 612 P.2d 180 (1980). To establish "operation" it is necessary to show that there was movement of the vehicle. See *State v. Kendall*, 274 Kan. 1003, 1008-10, 58 P.3d 660 (2002). The following direct evidence was sufficient for the jury to find Adame operated a vehicle: Officer Rucker testified Adame told him he drove the vehicle from Elm Street into the McDonalds' parking lot; West observed Adame

pushing the vehicle down the street and ultimately into West's vehicle; and Adame admitted he pushed the vehicle down the street.

In addition, there was circumstantial evidence to indicate that Adame operated the vehicle. Dalenia told Officer Daily her vehicle quit running while she was on the 1000 block of Elm Street. The McDonalds is on the 300 block of 11th Street. Thus, the jury could have concluded when Adame arrived after Dalenia's call, he was able to start the vehicle and he drove it from Elm Street into the parking lot of McDonalds on 11th Street, where the vehicle died again.

It is not necessary to show movement to establish an *attempt* to operate a vehicle under the influence of alcohol. *Kendall*, 274 Kan. at 1009. The evidence also allowed the jury to find Adame attempted to operate the vehicle. Adame was sitting on the driver's side with the key in the ignition trying to start the vehicle. Dalenia testified Adame tried to start the vehicle. Adame testified he tried to start the vehicle but was unsuccessful. An attempt does not require much effort, and it is reasonable to conclude that Adame would have driven the vehicle had he been able to start it. See *Stevens*, 285 Kan. at 318.

An appellate court does not reweigh the evidence or reevaluate the credibility of witnesses. All issues of credibility are resolved in favor of the State. *State v. Green*, 280 Kan. 758, Syl. ¶ 2, 127 P.3d 241, *cert. denied* 549 U.S. 913 (2006). There was sufficient evidence in this case to support Adame's conviction of driving under the influence of alcohol by both means—operating or attempting to operate a vehicle.

We would note that appeals on this issue, which are numerous, could be avoided by a deliberate strategy on the part of prosecutors to charge only the specific alternative means that fit clearly within the evidence to be presented at trial, rather than the shotgun approach that seems to have become prevalent.

Adame next claims the district court erred when it imposed Board of Indigents' Defense Services (BIDS) attorney fees without inquiring into his ability to pay. The State concedes the court erred in assessing the fees.

At the time of sentencing, the district court merely stated court-appointed attorney fees would be imposed. The actual BIDS attorney fees were imposed in the journal entry of sentencing. The court was required to consider Adame's financial condition and the nature of the burden that payment of attorney fees would impose upon him on the record at the time of assessment. See K.S.A. 22-4513; *State v. Robinson*, 281 Kan. 538, 543, 132 P.3d 934 (2006). The BIDS attorney fees are vacated, and the issue is remanded for further consideration of the fees pursuant to K.S.A. 22-4513(b) and *Robinson*, 281 Kan. at 546-47.

For some reason we see many violations of this statute and the *Robinson* rule.

Adame acknowledges the mandatory fine for a fourth DUI conviction is $2,500, but he argues the district court, when determining the method of payment of a fine, must still "take into account the financial resources of the defendant and the nature of the burden that its payment will impose." K.S.A. 21-4607(3). Adame contends this is so because community service may be ordered pursuant to K.S.A. 2008 Supp. 8-1567(j).

Adame is correct. The Kansas Supreme Court held that the $2,500 DUI fine was mandatory without regard to a defendant's ability to pay. *State v. Copes*, 290 Kan. 209, 222, 224 P.3d 571 (2010). But the Supreme Court also held the court must consider community service as provided in K.S.A. 2008 Supp. 8-1567(j) as an alternative to the fine and, in doing so, must take into account the defendant's financial resources. 290 Kan. at 223. In this case, the court did not consider community service as an alternative to the fine. Therefore, this matter is remanded and the court is directed to consider the alternative method of payment under K.S.A. 2008 Supp. 8-1567(j).

Finally, Adame challenges the district court's imposition of a $200 fine for driving while his license was suspended and a $300 fine for failure to provide proof of motor vehicle insurance, arguing the district court failed to take into account his ability to pay the fines at the time they were imposed. The State concedes on remand the court should consider K.S.A. 21-4607(3) before imposing

both the fine for driving while a license is suspended and the fine for failure to provide proof of insurance.

Construing a particular statute imposing a fine is a question of law over which appellate courts have unlimited review. See *State v. Raschke*, 289 Kan. 911, Syl. ¶ 3, 219 P.3d 481 (2009).

The statutory language regarding the fine for driving while a license is suspended states "every person convicted under this section shall be sentenced to at least five days' imprisonment and fined at least $100." K.S.A. 2008 Supp. 8-262(a)(3). Because the district court imposed a fine in this case that was above the minimum fine of $100, Adame contends the court was required to consider his financial ability to pay the fine. We agree. The fine under K.S.A. 2008 Supp. 8-262(a)(3) is vacated with directions that the court must consider Adame's financial resources on the record under K.S.A. 21-4607(3) if it imposes a fine exceeding the mandatory minimum fine of $100.

The fine imposed for Adame's conviction for operating a vehicle without proof of the required liability coverage poses a different question. K.S.A. 2008 Supp. 40-3104(g)(1) provides: "Any person violating any provision of this section shall be guilty of a class B misdemeanor and shall be subject to a fine of not less than $300 nor more than $1,000 *or* confinement in the county jail for a term of not more than six months, *or* both such fine and confinement." (Emphasis added.) In Adame's case, the district court imposed both a $300 fine and 6 months in jail. Adame argues the statute did not require imposition of any fine; therefore, the terms of K.S.A. 2008 Supp. 40-3104(g)(1) are discretionary, and the court was required to consider the factors in K.S.A. 21-4607(3).

K.S.A. 2008 Supp. 40-3104(g)(1) uses the disjunctive "or," which indicates the legislature's intent to provide the district court with discretion to order jail time in lieu of a fine. See *State v. Johnson*, 289 Kan. 870, 879, 218 P.3d 46 (2009). On the other hand, generally, when a mandatory minimum fine is imposed, the court is not required to take K.S.A. 21-4607(3) into consideration. See *Copes*, 290 Kan. at 222-23; *Raschke*, 289 Kan. at 916.

The State suggests the "or" language in K.S.A. 2008 Supp. 40-3104(g)(1) indicates the provision is discretionary and, thus, the

district court should be instructed to consider the factors in K.S.A. 21-4607(3). This would be a reasonable result but does not address whether the defendant's financial resources must be considered in the event the court imposes the statutory minimum fine or imposes solely a jail term.

It would be reasonable in this case to find that if a district court imposes the mandatory minimum fine under K.S.A. 2008 Supp. 40-3104(g)(1), the court is not required to consider the factors in K.S.A. 21-4607(3). But, in light of options presented in K.S.A. 2008 Supp. 40-3104(g)(1), the sentencing court should have taken each option into consideration, keeping in mind *all* the criteria for imposing a fine in K.S.A. 21-4607.

K.S.A. 21-4607(1) states:

"When the law authorizes any other disposition, a fine shall not be imposed as the sole and exclusive punishment unless having regard to the nature and circumstances of the crime and to the history and character of the defendant, the court is of the opinion that the fine alone suffices for the protection of the public."

K.S.A. 21-4607(2) provides:

"The court shall not sentence a defendant to pay a fine in addition to a sentence of imprisonment, probation or assignment to a community correctional services program unless:

"(a) The defendant has derived a pecuniary gain from the crime; or

"(b) the court is of the opinion that a fine is adapted to deterrence of the crime involved or to the correction of the offender."

K.S.A. 21-4607(2)(a) would not be relevant to a conviction under K.S.A. 2008 Supp. 40-3104. Regardless, in this case, where the court imposed both a fine and a jail term, the court should have made specific findings under K.S.A. 21-4607(2)(b). See *State v. McGlothlin*, 242 Kan. 437, 441, 747 P.2d 1335 (1988).

Affirmed in part, vacated in part, and remanded with directions.