NOT DESIGNATED FOR PUBLICATION

No. 123,390

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ESTEN MILLARD,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Barton District Court; MIKE KEELEY, judge. Opinion filed January 28, 2022. Affirmed.

*Donald E. Anderson II*, of Law Office of Donald E. Anderson II, LLC, of Topeka, for appellant.

*Ted E. Smith*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before SCHROEDER, P.J., BRUNS and WARNER, JJ.

PER CURIAM: Esten Millard challenges the district court's decision affirming the administrative suspension of his driving privileges by the Kansas Department of Revenue (KDOR) after his arrest for driving under the influence of alcohol. On appeal, Millard contends that the arresting officer exceeded the scope of the initial public safety encounter and improperly expanded the scope and length of the detention to conduct an investigation for driving under the influence. After a review of the record, we find no error and affirm the district court's decision to uphold the administrative suspension of Millard's driver's license.

1

On November 14, 2018, shortly after midnight, officers from the Great Bend Police Department were dispatched to Millard's residence due to a report that there was a vehicle running, the engine revving up, and the driver was slumped over in the vehicle. When Officer Shane Becker arrived on the scene, he saw a black Ford pickup truck parked in the driveway, and he could hear the engine "rapidly accelerating." Officer Becker found the driver—later identified as Millard—slumped over in the driver's seat of the pickup.

Officer Becker approached the truck on the passenger side while another officer walked up to the driver's side and began pounding on the window. Although the officers did not see Millard attempt to put the pickup into gear, they did observe that his foot was on the accelerator with the engine running. During Officer Becker's contact with Millard, the officer observed an odor of alcoholic beverages, slurred speech, bloodshot eyes, poor balance, and poor coordination. Millard also admitted to consuming alcoholic beverages that night.

The officers attempted to get Millard to perform standard field sobriety tests after they were finally able to get him out of the pickup. Officer Becker testified that he requested the field sobriety tests "[d]ue to the odor of alcohol . . . , the bloodshot, watery eyes, the initial call, him slumped over in his vehicle, [and] the vehicle running." The officer also testified Millard did not cooperate during field sobriety testing. Ultimately, based on his observations, Officer Becker arrested Millard for suspicion of driving under the influence. It is undisputed that Millard refused to take a chemical evidentiary breath test when requested to do so following his arrest. As a result, Officer Becker informed Millard that his driving privileges would be suspended based on his test refusal.

Officer Becker completed and served on Millard a revised DC-27 form. On the form, the officer indicated that there were reasonable grounds/probable cause to believe that Millard had been attempting to operate a vehicle while under the influence of alcohol. Officer Becker wrote that Millard "was sitting in the driver's seat, passed (slumped over) out, vehicle running, no others inside." At the evidentiary hearing before the district court, Officer Becker testified that he suspected Millard had attempted to operate a vehicle because the vehicle was running, his foot was on the accelerator, the keys were in the ignition, and Millard was passed out.

Millard initially sought an administrative hearing under K.S.A. 2018 Supp. 8-1020(a)(1) to challenge the suspension of his driver's license. The administrative law judge upheld the suspension, and Millard sought judicial review in the district court. On November 19, 2019, the district court held an evidentiary hearing at which Officer Becker was the only witness. At the conclusion of the hearing, the district court gave the parties the opportunity to file written closing arguments.

In a written memorandum decision filed on December 13, 2019, the district court denied Millard's request to set aside the suspension of his driver's license. Specifically, the district court found that the officers had reasonable suspicion to believe that Millard "had been operating or was attempting to operate a motor vehicle." Thereafter, Millard filed a timely notice of appeal.

ANALYSIS

*Standard of Review*

Our review of an agency decision is governed by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq. See K.S.A. 2018 Supp. 8-259(a); *Rosendahl v. Kansas Dept. of Revenue*, 310 Kan. 474, 480, 447 P.3d 347 (2019). In reviewing a district court's

3

decision after a trial de novo, we must first determine whether the district court's factual findings are supported by substantial competent evidence. In doing so, we give deference to the district court's credibility findings and do not reweigh conflicting evidence. We then determine whether the factual findings support the district court's ultimate legal conclusion. Our review of conclusions of law is unlimited. *Casper v. Kansas Dept. of Revenue*, 309 Kan. 1211, 1213-14, 442 P.3d 1038 (2019); *Swank v. Kansas Dept. of Revenue*, 294 Kan. 871, 881, 281 P.3d 135 (2012). The petitioner—in this case Millard— has the burden to establish that the district court erred. See K.S.A. 2018 Supp. 8-1020(q).

*Reasonable Suspicion to Extend Public Safety Encounter*

On appeal, Millard challenges whether the officers had a reasonable and articulable suspicion of criminal activity to justify the extension of what started as a public safety encounter to a driving under the influence investigation. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." Section 15 of the Kansas Constitution Bill of Rights contains similar language, providing "the same protection from unlawful government searches and seizures as the Fourth Amendment." *State v. Neighbors*, 299 Kan. 234, 239, 328 P.3d 1081 (2014). Whenever an officer interacts with a person in a public place, the person's Fourth Amendment rights are implicated.

Kansas has recognized four types of interactions between law enforcement officers and members of the public: (1) voluntary encounters; (2) investigatory detentions; (3) welfare checks or public safety encounters; and (4) arrests. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). In this judicial review action, the parties agree that the officers approached Millard for a public safety encounter, in which an officer may approach a person to check on his or her welfare. See *State v. Manwarren*, 56 Kan. App. 2d 939, 946, 440 P.3d 606 (2019); *Nickelson v. Kansas Dept. of Revenue*, 33 Kan. App.

4

2d 359, 363-64, 102 P.3d 490 (2004). Public safety encounters—which fall under law enforcement's community caretaking function—allows for officers to check on a person's welfare for safety as well as to provide assistance. See *State v. Ellis*, 311 Kan. 925, 930, 469 P.3d 65 (2020).

Once the officer is assured that a person is not in peril or is no longer in need of assistance, any extension of the encounter must be justified under the Fourth Amendment protections. *Manwarren*, 56 Kan. App. 2d at 947. In other words, a public safety encounter must be narrowly tailored to the reason for the stop or encounter and must not last any longer than necessary to fulfill the original purpose. *State v. Gonzales*, 36 Kan. App. 2d 446, 455, 141 P.3d 501 (2006). In addition, a public safety encounter is not intended for investigative purposes and should be "divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *State v. Messner*, 55 Kan. App. 2d 630, Syl. ¶ 2, 419 P.3d 642 (2018).

Nevertheless, the nature of a police-citizen encounter can change, and what may begin as a welfare check can transform into an investigative detention if the police officer makes additional observations of potential criminal conduct. Once law enforcement has completed the purpose of the initial detention, the detained person must be free to go unless the officer has a reasonable suspicion of criminal conduct. *Ellis*, 311 Kan. at 931; *State v. Chapman*, 305 Kan. 365, 370, 381 P.3d 458 (2016). Reasonable suspicion is defined as a "'minimum of objective justification' which is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *State v. Doelz*, 309 Kan. 133, 139, 442 P.3d 669 (2019).

Reasonable suspicion requires more than just a hunch; the officer must be able to state a particularized and objective basis for believing the person is engaged in criminal activity. *State v. Lowery*, 308 Kan. 359, 366, 420 P.3d 456 (2018). The United States Supreme Court has recognized that reasonable suspicion is a lower standard than

probable cause, and officers should be permitted to make "'commonsense judgments and inferences about human behavior.' [Citations omitted.]" *Kansas v. Glover*, 589 U.S. ___, 140 S. Ct. 1183, 1188, 206 L. Ed. 2d 412 (2020). Whether reasonable suspicion exists is a question of law. *State v. Thomas*, 291 Kan. 676, 688, 246 P.3d 678 (2011).

An officer is justified in investigating an individual for driving under the influence when there is a reasonable and articulable suspicion that the person operated or attempted to operate a vehicle while impaired by alcohol. See K.S.A. 2018 Supp. 8-1567(a); *Strickert v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 1, 11, 462 P.3d 649 (2020), *rev denied* 312 Kan. 902 (2020). The Kansas Implied Consent Act, K.S.A. 8-1001 et seq., similarly states that an officer may request a person to submit to various forms of testing for drugs or alcohol if at the time of the request the officer has reasonable grounds to believe the individual was operating or attempting to operate a vehicle while under the influence of alcohol. K.S.A. 2018 Supp. 8-l00l(b)(l).

Here, there is no dispute that the officers initially contacted Millard for legitimate safety and welfare reasons based on a report that there was a vehicle running, the engine revving up, and a person slumped over in the driver's seat. Based on the information developed during this encounter, Officer Becker testified that he suspected Millard was attempting to operate the vehicle when he arrived on the scene because he was in the driver's seat and the vehicle was running with the keys in the ignition. Moreover, the officer found it significant that Millard's foot was pressing down the accelerator.

After hearing the testimony and considering the evidence, the district court noted:

"[W]hen the officer arrived, he observed a vehicle with the keys in the ignition, the engine running and a person was slumped over the steering wheel, either asleep or passed out. The person's foot was on the accelerator causing the engine to rev up. There was difficulty in awakening the person in the driver's seat. Once awakened, there was evidence of intoxication."

6

Each of these findings are supported by substantial competent evidence in the record. Likewise, we find that it is reasonable to infer based on the evidence in the record that Millard was attempting to operate the pickup truck. The evidence also supports a reasonable and articulable suspicion to justify the extension of the public safety encounter to investigate criminal activity.

Millard points to evidence in the record that suggests that he had not operated or attempted to operate a vehicle. In particular, Millard points out that the pickup truck was in the driveway of his own residence at the time of the public safety encounter. Certainly, it is possible that Millard was not attempting to operate his pickup. However, we must focus on whether there is substantial competent evidence to support the officers' suspicion that Millard was engaged in criminal activity.

The parties cite a series of cases focusing on the issue of attempt or attempting to operate a vehicle in which Kansas courts analyzed whether evidence supported a criminal conviction under K.S.A. 8-1567 beyond a reasonable doubt. As we review these cases, we note that in *Furthmyer v. Kansas Dept. of Revenue*, 256 Kan. 825, 836, 888 P.2d 832 (1995), our Supreme Court recognized that in a driver's license suspension case in which the driver refused an evidentiary breath test, the State need only prove that the officer had reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs rather than proof beyond a reasonable doubt. In that case, the officer saw a running vehicle stopped at a stop sign. The vehicle was in gear, the headlights on, and the driver was passed out with his foot on the brake.

In *State v. Fish*, 228 Kan. 204, 210, 612 P.2d 180 (1980), the Kansas Supreme Court initially construed the phrases "to operate" similar to "to drive" as requiring evidence, direct or circumstantial, that a criminal defendant drove a vehicle while impaired. The defendant in *Fish* was found in a vehicle parked off the roadway with the engine on and the vehicle in park. Our Supreme Court rejected the State's argument that

the phrase "to operate" should be construed more broadly than "to drive," finding the terms should be used interchangeably. 228 Kan. at 209-10. The court concluded that there must be some evidence, either direct or circumstantial, that the defendant drove the vehicle while intoxicated in order for the defendant to be convicted under K.S.A. 1979 Supp. 8-1567. 228 Kan. at 210.

After the narrow holding in *Fish*, the Legislature amended K.S.A. 8-1567 to encompass a broader range of conduct. In *State v. Kendall*, 274 Kan. 1003, 58 P.3d 660 (2002), the Kansas Supreme Court recognized that the Legislature amended K.S.A. 8-1567—most likely in response to the holding in *Fish*—to prohibit "the operation or *attempt* to operate any vehicle by a person under the influence of alcohol." L.1985, ch. 48, § 9. The defendant in *Kendall* was observed to be asleep and slumped over his steering wheel in the middle of a public street. The vehicle was running, the gear in neutral, and the defendant's foot was on the brake pedal. Even though no one observed the vehicle move, the court concluded that the jury's finding that Kendall attempted to operate the vehicle was supported by sufficient evidence. 274 Kan. at 1012.

Relevant here, the *Kendall* court noted the Legislature's amendment to the DUI statute appeared to encompass those who merely tried but failed to drive the vehicle. 274 Kan. at 1009. Likewise, the Legislature made similar changes to the Implied Consent laws. L.1985, ch. 48, § 3. In *State v. Ahrens*, 296 Kan. 151, 157, 290 P.3d 629 (2012), our Supreme Court concluded that this change was the Legislature's "attempt to express its intent that the term 'operate' should be broadly construed."

In *State v. Darrow*, 304 Kan. 710, 374 P.3d 673 (2016), the Kansas Supreme Court affirmed the DUI conviction of a defendant who was observed to be passed out behind the wheel of a vehicle with the vehicle ignition on. When law enforcement woke the driver up, he fumbled with the gears, but the vehicle stayed in park. The *Darrow* court found sufficient evidence to affirm his conviction for DUI, specifically noting that

8

Darrow attempted to manipulate the controls of the vehicle. 304 Kan. at 719. The *Darrow* court recognized that the amendments to the DUI statute signaled a broader set of factual circumstances, but it found that evidence of driving, moving the vehicle, or attempting to drive still needed to be presented to support a conviction under K.S.A. 8-1567. 304 Kan. at 714. In *Darrow*, the court found the defendant committed an overt act of driving by attempting to manipulate the controls of the vehicle. 304 Kan. at 719.

In *State v. Sprague*, No. 105,827, 2012 WL 3822625 (Kan. App. 2012) (unpublished opinion), an officer found the driver asleep and slumped over the steering wheel in the driver's seat of a vehicle parked on the side of the road. The engine was running, and the radio was playing. The driver claimed that his cousin had driven him home from a local bar, and he "passed out" in the passenger seat on the way home. 2012 WL 3822625, at *1. The driver testified that he did not remember how he ended up in the driver's seat. In finding sufficient evidence to support a conviction under K.S.A. 8-1567, a panel of this court held that "[t]he jury could infer from the evidence that Sprague had driven the truck home because he was found in the driver's seat with the engine still running." 2012 WL 3822625, at *7. See *State v. Adame*, 45 Kan. App. 2d 1124, 1129, 257 P.3d 1266 (2011) (holding sufficient evidence supported a conviction for DUI when evidence showed the driver sat on the driver's side of the vehicle with the key in the ignition and attempted to start the vehicle); *State v. Stottlemire*, No. 105,284, 2011 WL 4357860, at *3 (Kan. App. 2011) (unpublished opinion) (finding sufficient evidence to support the element of attempt to operate because the deputy saw the driver in the driver's seat of a parked SUV with a key in the ignition, the motor running, and the driver admitted that she started the vehicle); *Kent v. Kansas Dept. of Revenue*, No. 104,554, 2011 WL 3276227, at *5 (Kan. App. 2011) (unpublished opinion) (finding officer had reasonable suspicion that driver had operated or attempted to operate a vehicle when driver was found asleep at the wheel of his parked vehicle, the seat reclined, the engine running, and the car radio blaring); *Braun v. Kansas Dept. of Revenue*, No. 88,869, 2003 WL 25756415, at *4 (Kan. App. 2003) (unpublished opinion) (reasonable suspicion

9

existed for officer to believe that driver had operated or attempted to operate his vehicle while under the influence of alcohol when a deputy found Braun intoxicated, asleep in his running vehicle which was parked on the shoulder of a rural road, and the hazard lights were activated).

It is important to recognize that these criminal cases addressed the issue of whether there was sufficient evidence to prove beyond a reasonable doubt that a crime was committed under K.S.A. 8-1567. Here, in this appeal from the district court's review of an administrative action, we are dealing with a substantial competent evidence standard rather than the higher standard of beyond a reasonable doubt. As discussed above, the record in this judicial review action shows that the officers observed Millard slumped over in the driver's seat, the vehicle was running, and Millard was pushing the gas pedal to the floor, which resulted in the engine repeatedly revving. The officers also observed signs consistent with intoxication, such as the odor of alcohol, Millard's bloodshot and watery eyes, and the fact that he was observed slumped over in his vehicle while the vehicle was running, and the engine was revving.

As our Supreme Court has held:

> "'An officer is not required to disregard information which may lead him or her to suspect independent criminal activity during a traffic stop. *When "the responses of the detainee and the circumstances give rise to suspicions unrelated to the traffic offense, an officer may broaden his inquiry and satisfy those suspicions."'* State v. Schooler*, 308 Kan. 333, 346, 419 P.3d 1164 (2018) (quoting *State v. Morlock*, 289 Kan. 980, 996, 218 P.3d 801 [2009]).

In this action, there is substantial evidence in the record to support the extension of the public safety encounter based on a reasonable and articulable suspicion that Millard had operated or attempted to operate the pickup while intoxicated. As such, we find evidence in the record to support the officer's reasonable suspicion that Millard had

committed or was committing a crime and further detain him for a DUI investigation. See K.S.A. 2018 Supp. 8-1567. This evidence supported the officer's decision to extend the public safety encounter into an investigatory detention and subsequent arrest. Thus, the decision by the officers to further detain Millard for an investigation for driving under the influence was justified.

Accordingly, we affirm the district court's decision to uphold the KDOR's suspension of Millard's driver's license.

Affirmed.