NOT DESIGNATED FOR PUBLICATION

No. 124,581

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

AMY C. YOUNTS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed January 6, 2023. Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., HILL and ATCHESON, JJ.

PER CURIAM: Defendant Amy C. Younts challenges the sufficiency of the evidence supporting the decision of a jury sitting in Sedgwick County District Court to convict her of felony driving under the influence. The case is a little unusual because the jury heard evidence of two possible violations of K.S.A. 8-1567(a), the statute criminalizing driving under the influence. The trial evidence, however, supported both possibilities. We, therefore, find no error and affirm the guilty verdict and the resulting sentence.

1

We may briefly outline the relevant facts. Sometime after midnight on July 3, 2019, Younts was driving northbound on the Kansas Turnpike in very southern Sedgwick County when she crashed her large SUV into the center median, spinning the vehicle about 180 degrees, and leaving it obstructing one of the traffic lanes. The mishap rendered the vehicle inoperable.

Highway Patrol Trooper Aaron Amrein was dispatched to the scene around 1:45 a.m.; he arrived about 20 minutes later. Fire department and EMS personnel were already there when Amrein showed up. He saw Younts walking into the traffic lanes, where she was stopped by some of the first responders. In Amrein's presence, Younts got into the SUV and attempted to start the vehicle. The keys were in the ignition, but the engine wouldn't turn over. Amrein told Younts to get out of the SUV because it wouldn't start and she was drunk.

Amrein smelled a strong odor of alcohol on Younts. She had bloodshot, watery eyes, and her speech was slurred. Amrein observed no injuries to Younts. She claimed none and apparently declined any medical treatment, since the EMS responders permitted Amrein to place her in his patrol car and to transport her to jail. Amrein and a second trooper had to guide and push Younts to the patrol car; she dragged her feet and was otherwise physically uncooperative.

Once seated in the patrol car, Younts made various incriminating statements, and the circumstances pointed to her as the driver and sole occupant of the SUV. Younts told the troopers she was trying to turn around to head to Tulsa, Oklahoma, when she struck the median. And she said she was glad she got drunk that night. Younts seemed to display mood swings as she interacted with Amrein and the other trooper and, at one point, told them she thought she was in or near Newton, a city well to the north.

Younts said nothing about a second person being in the SUV, and nobody stepped forward claiming to have been a passenger or the driver. There were a number of civilians on the scene, who may have been passing motorists who stopped or patrons from a nearby casino. Younts, the registered owner of the SUV, was alone in the vehicle when she tried to drive away.

Amrein did not have Younts perform any field sobriety tests at the scene because of safety concerns. Amrein testified that as a matter of practice, he does not administer field sobriety tests at the jail after transporting a suspected drunk driver. He followed that practice with Younts. The trial evidence did not include the results of any blood alcohol tests.

Amrein found four liquor bottles on the passenger side floorboard of the SUV's front seat. He testified one of the bottles was empty. But he was not asked whether the other three were still sealed or open and partially consumed. The trial record is silent about the size of the bottles, and Amrein did not retain them as evidence.

Because Younts was somewhat belligerent, Amrein testified he did not directly question her about what happened, so he did not ask if she were driving the SUV at the time of the collision. Nor did he ask her if she had been drinking, what she drank, or when. While testifying, Amrein, therefore, agreed he never saw Younts actually drive the SUV and agreed he didn't know how much she may have drunk before she hit the median rather than afterward.

Amrein was the State's only witness at the April 2021 trial. Younts did not testify in her own defense and offered no other evidence. The jury convicted Younts of operating a motor vehicle while under the influence of alcohol in violation of K.S.A. 2019 Supp. 8-1567(a)(3). Because Younts had two previous qualifying DUI convictions,

3

this conviction is a felony. The district court later sentenced her in conformity with K.S.A. 2019 Supp. 8-1567(b)(1)(D), for third-conviction felony. Younts has appealed.

LEGAL ANALYSIS

On appeal, Younts contends the State introduced insufficient evidence at trial to support the jury's verdict. She does not separately dispute the sentence she received. In sifting through a sufficiency challenge, we consider the evidence in a light most favorable to the party prevailing in the district court, here the State, and in support of the jury's verdict. An appellate court will neither reweigh the evidence generally nor make credibility determinations specifically. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). The issue for review is simply whether rational jurors could have found the defendant guilty beyond a reasonable doubt. *Butler*, 307 Kan. at 844-45; *State v. McBroom*, 299 Kan. 731, 754, 325 P.3d 1174 (2014).

Before turning to our analysis, we need to fill in some procedural markers to provide a context for that exercise.

The charge against Younts was officially "driving under the influence" defined as "operating or attempting to operate any vehicle . . . while . . . under the influence of alcohol to a degree that renders the person incapable of driving safely." K.S.A. 2019 Supp. 8-1567(a)(3). An attempt—a failed effort to carry out the proscribed action—is sufficient to commit the offense of DUI, unlike most crimes. See K.S.A. 2021 Supp. 21-5301(a) (defining attempt). And unlike most attempts, an attempt to drive under the influence is punished as severely as the completed act of driving. See, e.g., K.S.A. 2021 Supp. 21-5301(c)(1) (general rule assigns lower severity level to convictions for attempts to commit nondrug felonies).

4

The trial evidence depicted two discrete actions on Younts' part that might have violated K.S.A. 8-1567(a)(3): Crashing the SUV into the median, as a completed act of driving under the influence; and trying to start the SUV after getting back into the vehicle, as an attempt to drive. So the record evidence makes this a multiple acts case, meaning the defendant committed more than one act that if proved would warrant a guilty verdict on a single charge. In a multiple acts case, a criminal defendant's right to a unanimous verdict requires the jurors be instructed that to convict, they must agree that one particular wrongful act has been proved beyond a reasonable doubt. See *State v. Cottrell*, 310 Kan. 150, 154-55, 445 P.3d 1132 (2019) (recognizing rule but finding no multiple acts); *State v. Colston*, 290 Kan. 952, 961, 235 P.3d 1234 (2010) (use of jury instruction); PIK Crim. 4th 68.100 (2020 Supp.) (instruction on multiple acts and need for unanimity as to particular act).

Here, the district court provided the jurors with an appropriate multiple acts instruction. The district court also instructed the jurors that to convict Younts, they had to find beyond a reasonable doubt she "operated or attempted to operate a motor vehicle." In closing argument to the jurors, the prosecutor identified the two acts that could support the charge. The jurors returned a general verdict finding Younts guilty of DUI. We, therefore, do not know which act they relied on, and they may have determined both were sufficient.

Against that backdrop, Younts says there was insufficient evidence to support either act, i.e., driving under the influence or attempting to do so. Because we don't know the precise factual basis for the jury's guilty verdict, if Younts is correct in either respect, we must reverse the conviction. In other words, the State must point to sufficient evidence to support both driving and an attempt to drive to preserve the conviction.

As to the attempt, Trooper Amrein watched Younts as she climbed into the driver's seat of the SUV and tried to start the vehicle. The keys were in the ignition. The attempt

5

failed because the SUV had been so damaged in striking the median that it wouldn't start. Younts' efforts were sufficient to constitute an attempt to drive. *State v. Adame*, 45 Kan. App. 2d 1124, 1129, 257 P.3d 1266 (2011) (sitting in driver's seat and trying to start vehicle sufficient to establish attempt under DUI statute); *State v. Stoddard*, No. 117,886, 2018 WL 3077099, at *2 (Kan. App. 2018) (unpublished opinion); cf. *State v. Klein*, No. 119,004, 2019 WL 3518314, at *2 (Kan. App. 2019) (unpublished opinion) ("An attempt to operate requires the defendant to do something immediately proximate and preparatory to driving."). Although the SUV was disabled, it remained a motor vehicle under the traffic code. K.S.A. 8-1437 ("'motor vehicle'" defined as "every vehicle . . . which is self-propelled," other than several specifically identified types of transportation).

Likewise, there was ample evidence to support a reasonable conclusion Younts was heavily intoxicated and unable to drive safely at that point. She gave the appearance of being drunk—she smelled of alcohol; she had bloodshot eyes; she slurred her speech; she admitted to having gotten drunk; she was emotionally volatile; and there was an empty liquor bottle in the SUV. Moreover, the circumstances of the initial mishap were indicative of an inability to drive safely. We have repeatedly recognized that a significant motor vehicle accident otherwise unexplained by bad weather, an obstruction in the roadway, or similar external factors may be considered evidence of impairment. See *State v. Price*, No. 119,411, 2019 WL 3367891, at *5 (Kan. App. 2019) (unpublished opinion); *State v. Alexander*, No. 114,729, 2016 WL 5344569, at *4 (Kan. App. 2016) (unpublished opinion) (evidence showed defendant "grossly miscalculated" turn on residential street during day, "way overcorrected," and then "fishtail[ed]," supporting finding of unsafe operation of motor vehicle in DUI prosecution); *State v. Swingle*, No. 107,856, 2013 WL 4729565, at *4 (Kan. App. 2013) (unpublished opinion) (car left roadway, crossed ditch, and hit fence during day and in good weather—so "[t]he mishap itself is consistent with and would be indicative of an impaired driver"); *State v. Bardsley*, No. 105,324, 2012 WL 1072759, at *2-3 (Kan. App. 2012) (unpublished opinion); *State v. Guinn*, No. 94,114, 2005 WL 3527080, at *3 (Kan. App. 2005)

(unpublished opinion). As we pointed out in *Price*: "A recurrent scenario entails a single vehicle mishap in which the driver inexplicably swerves or skids off the road and strikes an object, often a tree or fence post, disabling the vehicle." 2019 WL 3367891, at *5. Here, there was no exculpating explanation for the mishap. To the contrary, Younts told Amrein she struck the median because was trying to turn around to head south toward Tulsa—a maneuver on a divided, limited access highway that evinces at least a serious lack of judgment and, under these circumstances, likely alcohol impairment.

Much of what we have outlined also bears on the trial evidence supporting Younts' guilt for having driven under the influence immediately before the collision. The circumstances portray a DUI violation, and that requires us to affirm, given our deferential standard of review. See *State v. Thach*, 305 Kan. 72, 84, 378 P.3d 522 (2016) (even gravest crimes may be proved with only circumstantial evidence). First, Younts was the only person at the scene associated in any way with the SUV. A jury, therefore, could reasonably conclude she was driving the SUV when it struck the median. She essentially said as much to Amrein in explaining why the crash occurred. Second, as we have already explained, the nature of the mishap itself furnishes indirect, though quite reasonable, evidence of impaired driving. Finally, Younts' state of intoxication as she interacted with Amrein was consistent with her having been less than sober before the crash. Similarly, her declaration to Amrein that she was glad she got drunk supports that inference. The last two pieces of circumstantial evidence take on added weight when considered in conjunction with lack of an alternative explanation for the crash.

Although the evidence Younts drove while under the influence may not present the strongest case imaginable—there were neither direct admissions on her part nor blood alcohol test results—it is enough to support a jury verdict of guilty on the charge, especially taken in the best light for the State. The unrebutted facts pertaining to the collision itself and Younts' insobriety coupled with the inferences reasonably drawn from those facts provide an adequate underpinning for each element of a DUI charge based on

driving rather than simply an attempt to drive. Accordingly, the jury properly could have convicted Younts on that ground.

In sum, we conclude the trial evidence supported a conviction based on either of the distinct acts of operating a motor vehicle under the influence or of attempting to operate a motor vehicle under the influence. Younts, therefore, has not undermined the jury's guilty verdict, and her appeal fails.

Affirmed.