NOT DESIGNATED FOR PUBLICATION

No. 122,682

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TY R. ZEINER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Marion District Court; MARGARET F. WHITE, magistrate judge. Opinion filed June 11, 2021. Affirmed in part and reversed in part.

*Kelly J. Trussell*, of Sloan, Eisenbarth, Glassman, McEntire & Jarboe L.L.C., of Topeka, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., ATCHESON, J., and BURGESS, S.J.

BURGESS, S.J.: A jury convicted Ty Zeiner of driving under the influence pursuant to K.S.A. 2020 Supp. 8-1567(a)(1) and (3). On appeal, he argues that there was insufficient evidence to support his convictions and that the district court erred by denying his request to define "operate" as "drive" in the jury instructions.

The record reflects there is sufficient evidence to support the K.S.A. 2020 Supp. 8-1567(a)(3) conviction. There is insufficient evidence for his K.S.A. 2020 Supp. 8-1567(a)(1) conviction because a deficient breath sample cannot be used to prove a

person's breath-alcohol concentration exceeded 0.08. The district court's declination to define "operate" in the jury instruction did not result in reversible error. We affirm in part and reverse in part.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of November 18, 2018, Jarret McLinden was driving home when he noticed a white SUV parked on a gravel road several miles east of the city of Marion. The SUV's headlights were on, its engine running, and its driver asleep at the wheel. Unsure of what to do, McLinden called his father, who said he would call the sheriff and told his son to come home.

At approximately 3:15 a.m., Deputy Larry Starkey of the Marion County Sheriff's Office responded to a call about the parked vehicle. When he arrived 15 minutes later, the SUV's engine was not running but its headlights were on and its radio was playing. Starkey parked his patrol truck, approached the SUV, and saw the driver, who he recognized as Zeiner, sleeping in the driver's seat. Starkey tapped on the window, and Zeiner woke up and opened the car door to talk.

Zeiner explained that between 6:30 and 7 the previous evening, he ate dinner and drank two beers at an Emporia restaurant. He then went to Ad Astra Food & Drink in Strong City, where he spent at least an hour with a friend, John Maddox, left to return home, and eventually pulled over about 3 miles from his house to rest. Deputy Starkey noticed the smell of alcohol on Zeiner's breath, his reactions were a bit slow, and he had "glassy eyes." Starkey asked him to perform various field sobriety tests.

The weather that early morning was inclement with temperatures in the 20s and 15 mile-per-hour winds. To provide a shield from the wind, Deputy Starkey had Zeiner perform the walk-and-turn and the one-leg-stand field sobriety test behind his patrol

2

truck. Zeiner performed both tests at least twice. During the walk-and-turn, he did not walk heel-to-toe or walk in a straight line. During the one-leg stand, he missed a number while counting, put his foot down, and had trouble balancing, needing to lean on Starkey's truck during the test.

After the tests, Zeiner and Deputy Starkey moved into the patrol truck to talk. Zeiner eventually agreed to let Starkey search his SUV. During the search, Starkey found an unopened beer bottle in the center console, an empty beer bottle behind the passenger seat, and beer bottle caps in the front passenger compartment. While Zeiner knew about the unopened bottle—he showed it to Starkey when first stopped—he did not know about the empty bottle.

Based on the tests, Deputy Starkey arrested Zeiner and transported him to the sheriff's office to perform a breath test. Between 4:50 and 5:40 a.m., Zeiner took the test three times. The first test produced no reading because Zeiner did not blow into the machine. During the second and third tests, he provided deficient breathing samples. The samples were sufficient for a reading, expressed as the highest breath-alcohol concentration measured, but inadequate for a full analysis. The readings were 0.134 and 0.145, respectively.

The State charged Zeiner with one count of driving under the influence under K.S.A. 2020 Supp. 8-1567(a)(1) (breath-alcohol concentration of at least 0.08) and, in the alternative, K.S.A. 2020 Supp. 8-1567(a)(3) (incapable of safely driving due to intoxication). The State also charged him with transporting liquor in an open container.

At the jury trial, McLinden and Starkey testified about their observations of Zeiner on the night in question. Deputy James Philpott testified about trying to administer the Intoxilyzer 9000. The State also showed the jury Starkey's body cam video of his entire encounter with Zeiner. Maddox testified that Zeiner did not seem intoxicated to him

3

when they were together at Ad Astra, but he admitted that he was not looking for clues of whether Zeiner was intoxicated. Maddox also admitted that he was "pretty intoxicated" when he encountered Zeiner at Ad Astra. Zeiner did not testify at trial.

Zeiner sought to include a definition of "operate," as used in K.S.A. 2020 Supp. 8-1567(a), in the jury instructions. The district court denied the request, noting that the definition was not in the pattern jury instructions, and Zeiner objected. After hearing testimony and watching a recording of the stop, the jury convicted Zeiner of driving under the influence under both subsections but acquitted him of the open container charge. The court subsequently imposed 12 months' probation with an underlying 90-day jail term but stayed the sentence pending appeal.

ANALYSIS

Zeiner raises three arguments on appeal. First, he argues his deficient breath samples are insufficient to support his conviction under K.S.A. 2020 Supp. 8-1567(a)(1). Second, he asserts insufficient evidence supports his conviction under K.S.A. 2020 Supp. 8-1567(a)(3). Third, he contends the district court erred when it denied his request to define "operate" in the jury instructions for the driving under the influence charge.

Zeiner's first argument is correct. Since the only evidence establishing his breath-alcohol concentration was the test results from his deficient breath samples, there was insufficient evidence to support Zeiner's conviction under K.S.A. 2020 Supp. 8-1567(a)(1). However, sufficient evidence supports his conviction under K.S.A. 2020 Supp. 8-1567(a)(3), and any jury instruction error was harmless.

*Sufficient Evidence Does Not Support Zeiner's Conviction Under K.S.A. 2020 Supp. 8-1567(a)(1) But Does Support His Conviction Under K.S.A. 2020 Supp. 8-1567(a)(3).*

When reviewing the sufficiency of the evidence, an appellate court must determine whether it is convinced a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018). This involves looking at both the direct and circumstantial evidence and any reasonable inferences that evidence yields. See *State v. Darrow*, 304 Kan. 710, 716, 374 P.3d 673 (2016); *State v. Perkins*, 296 Kan. 162, 167, 290 P.3d 636 (2012). Courts avoid reweighing the evidence or making credibility determinations when performing this assessment. Instead, they view the evidence in a light most favorable to the State. *Jenkins*, 308 Kan. 545, Syl. ¶ 1.

1. *There Was Insufficient Evidence to Prove Zeiner's Breath-Alcohol Concentration Exceeded 0.08.*

The State charged Zeiner with driving under the influence under K.S.A. 8-1567(a)(1). That subsection prohibits operating or attempting to operate a vehicle while "[t]he alcohol concentration in the person's blood or breath as shown by any competent evidence, including other competent evidence, as defined in K.S.A. 8-1013(f)(1), and amendments thereto, is 0.08 or more." K.S.A. 2020 Supp. 8-1567(a)(1). "Other competent evidence" includes "(1) [a]lcohol concentration tests obtained from samples taken three hours or more after the operation or attempted operation of a vehicle; and (2) readings obtained from a partial alcohol concentration test on a breath testing machine." K.S.A. 2020 Supp. 8-1013(f).

This court has previously equated a deficient breath sample to a partial alcohol concentration test under K.S.A. 8-1013(f)(2). See *State v. Maze*, 16 Kan. App. 2d 527, 533-34, 825 P.2d 1169 (1992); see also *State v. Chastain*, 265 Kan. 16, 19-20, 960 P.2d 756 (1998) (citing *Maze*). Because K.S.A. 2020 Supp. 8-1567(a)(1) only allows the admission of other competent evidence as defined under K.S.A. 2020 Supp. 8-1013(f)(1), a deficient breath sample cannot be used to show a driver's breath-alcohol concentration

met or exceeded 0.08. *State v. Herrman*, 33 Kan. App. 2d 46, 49-50, 99 P.3d 632 (2004) (citing *Maze*). While the Kansas Supreme Court has not squarely affirmed *Herrman*, it has approved its reasoning. See *State v. Stevens*, 285 Kan. 307, 321-22, 172 P.3d 570 (2007) (deficient breath tests are admissible under K.S.A. 8-1567[a][3] because that subsection does not contain K.S.A. 8-1567[a][1]'s limiting language), *overruled on other grounds by State v. Ahrens*, 296 Kan. 151, 290 P.3d 629 (2012).

The only evidence presented to prove Zeiner's breath-alcohol concentration was the results from the deficient breath samples. The State, citing *Herrman* and *Stevens*, concedes those samples are not competent evidence to establish Zeiner's breath-alcohol concentration. Absent a persuasive reason to depart from those cases, the State failed to prove Zeiner's breath-alcohol concentration exceeded 0.08. There was insufficient evidence to support his conviction under K.S.A. 2020 Supp. 8-1567(a)(1).

2. *Sufficient Evidence Supports Zeiner's Conviction Under K.S.A. 2020 Supp. 8-1567(a)(3).*

Zeiner also challenges the sufficiency of the evidence supporting his conviction under K.S.A. 2020 Supp. 8-1567(a)(3). He raises two main arguments. While he admits that he drove from Strong City, he contends insufficient evidence establishes he operated or attempted to operate his vehicle after pulling over on the gravel road. Further, he asserts insufficient evidence indicated that he could not safely drive his vehicle while driving from Strong City or after parking his vehicle at the side of the road.

K.S.A. 2020 Supp. 8-1567(a)(3) prohibits "operating or attempting to operate any vehicle within this state while . . . under the influence of alcohol to a degree that renders the person incapable of safely driving a vehicle." The statute contains two parts: a person must either operate or attempt to operate a vehicle, and while doing so, the person must be incapable of safely driving due to intoxication. "Operate" means "drive," which

6

requires physical movement of the vehicle. *Darrow*, 304 Kan. at 714; *State v. Kendall*, 274 Kan. 1003, 1009, 58 P.3d 660 (2002); *State v. Fish*, 228 Kan. 204, 210, 612 P.2d 180 (1980). An attempt to operate does not require movement. It encompasses those who tried to move a vehicle. *Darrow*, 304 Kan. at 714; *Kendall*, 274 Kan. 1003, Syl. ¶¶ 3-4; see also *Ahrens*, 296 Kan. at 160 ("[T]he legislature employed the phrase 'operate or attempt to operate' in order to encompass a broader set of factual circumstances that could establish the driving element.").

A person is incapable of safely driving a vehicle due to intoxication when alcohol impairs that person's physical or mental function to such an extent that he or she cannot safely drive in accordance with traffic regulations that may be encountered. See *State v. Brueninger*, 238 Kan. 429, 434, 710 P.2d 1325 (1985); *State v. Mourning*, 233 Kan. 678, 682, 664 P.2d 857 (1983); *State v. Price*, No. 119,411, 2019 WL 3367891, at *7 (Kan. App. 2019) (unpublished opinion). Although this threshold will vary depending on the individual, a breath-alcohol concentration of at least 0.08 creates a presumption of incapability. K.S.A. 8-1005(a)-(b); see *Price*, 2019 WL 3367891, at *6. The State may prove this incapability through a variety of evidence, including a deficient breath sample. *State v. Stevens*, 36 Kan. App. 2d 323, 329-30, 138 P.3d 1262 (2006), *aff'd* 285 Kan. 307, 172 P.3d 570 (2007).

Zeiner asserts insufficient evidence shows he was incapable of safely driving when he drove from Strong City. Although Zeiner admitted to drinking at dinner in Emporia, Maddox stated Zeiner did not appear to be intoxicated at Ad Astra, though he was unsure whether Zeiner drank there. Based on the beer bottles and bottle caps found in his SUV, Zeiner postulates that he could have drank after stopping on the gravel road and thrown the bottles on the side of the road. The State asserts a jury could have easily concluded that Zeiner drank in Strong City. It is the State's position that the jury could just as easily found it illogical that Zeiner would stop a few miles from home to rest, then drink in his SUV, and then fall asleep on a cold morning. The question presented to the

7

jury was if Zeiner had not been drinking, why did he not just drive the remaining 3 miles to his home if he was tired and wanted to rest or if he wanted to have a beer?

Sufficient evidence supports the finding that Zeiner was intoxicated when driving from Strong City. After hearing testimony and viewing the recording of the stop, the jury was tasked with weighing the evidence and making credibility determinations. This included assessing Zeiner's defense that he drank after stopping on the road. The jury apparently rejected that argument, and it is not within this court's ambit to reassess that credibility determination. Evidence indicates Zeiner was intoxicated when returning from Strong City. Despite Zeiner's ability to interact with the deputy, his performance during his field sobriety tests and the breath test results suggest he was incapable of safely driving a vehicle. Combined with his admission to having driven from Strong City, sufficient evidence supports Zeiner's conviction.

Zeiner also asserts there is insufficient evidence to prove he either attempted to operate his car or was incapable of safely driving after he parked on the gravel road. He primarily argues that he never attempted to drive because, based on a review of cases, he never tried to turn on the engine in Deputy Starkey's presence. Though he does not challenge McLinden's observation that the engine was running and he was asleep before Deputy Starkey received the call to investigate the parked vehicle, Zeiner claims no evidence indicates he was incapable of safely driving at that time.

A variety of actions may constitute an attempt to operate a vehicle. Trying to shift gears is sufficient, even when the car's engine is not running. *Darrow*, 304 Kan. at 718-20 (attempt to operate when person is in driver's seat, engine running, and fumbling with gear shift lever); *State v. Barry*, No. 119,033, 2019 WL 985434, at *5 (Kan. App.) (unpublished opinion) (trying to start the car and shift gears when battery is dead), *rev. denied* 310 Kan. 1063 (2019). A running engine also often indicates an attempt to drive. *Kendall*, 274 Kan. at 1004, 1012 (answer to jury question harmless when engine running,

8

headlights on, driver had seatbelt on and foot on the brake, and car in neutral and parked in street); *State v. Stottlemire*, No. 105,284, 2011 WL 4357860, at *3 (Kan. App. 2011) (unpublished opinion) (keys in ignition and engine running while parked in driveway); *State v. Jones*, No. 102,530, 2010 WL 3732019, at *1 (Kan. App. 2010) (unpublished opinion) (keys in ignition and engine running).

Placing the keys in the ignition or an attempt to start the car may be enough. *State v. Adame*, 45 Kan. App. 2d 1124, 1129, 257 P.3d 1266 (2011) (trying to start engine with key in ignition); *Barry*, 2019 WL 985434, at 5; *State v. Stoddard*, No. 117,886, 2018 WL 3077099, at *1-2 (Kan. App. 2018) (unpublished opinion) (where ignition had been modified so that car could be started with screwdriver, two attempts to start car with screwdriver sufficient, even though key not in ignition); *City of Wichita v. Logan*, No. 115,385, 2017 WL 5617106, at *1, 5 (Kan. App. 2017) (unpublished opinion) (engine not running but keys in ignition of van stopped in middle of the road); *State v. Buchanan*, No. 109,460, 2014 WL 3630196, at *10-11 (Kan. App. 2014) (unpublished opinion) (answer to jury question not clear error; though engine was off, ignition and radio were on, windshield wipers were operating, and horn was blaring).

In the end, it does not matter whether the State presented sufficient evidence to show that Zeiner attempted to drive his vehicle after he pulled over to the side of the road. What is more important in this case is that Zeiner admitted that he drove his SUV from Strong City to the place where Starkey found him. To uphold Zeiner's conviction, the evidence viewed in the light most favorable to the State must show that Zeiner drove his vehicle *while* he was under the influence of alcohol to a degree that rendered him incapable of safely driving. The evidence clearly showed that Zeiner was under the influence of alcohol to a degree that rendered him incapable of safely driving when Starkey woke him up—and Zeiner does not dispute this fact in his brief. The question then becomes whether there was sufficient evidence to show that Zeiner was under the

influence of alcohol to a degree that rendered him incapable of safely driving when he admittedly drove from Strong City before pulling over to the side of the road.

Zeiner suggested to the jury that he drank after pulling over to the side of the road, based on the evidence of the empty beer bottle and bottle caps found in his car. This explanation is plausible, but the jury rejected it. Based on all the evidence presented at trial, the State's theory of how Zeiner became intoxicated seems even more plausible. The jury did not have to believe Zeiner's testimony that he only drank two beers during his dinner at the Emporia restaurant. And since Zeiner had dinner in Emporia, it seems unlikely that he stopped at Ad Astra in Strong City only to consume more food. The jury could reasonably conclude from the evidence that Zeiner did his drinking that night in Emporia and Strong City rather than drinking on the side of the road.

A conviction can be based entirely on circumstantial evidence. On appeal, our court must view the evidence in the light most favorable to the State, and the State is entitled to receive any reasonable inferences from the evidence. *Darrow*, 304 Kan. at 716. We know that Zeiner was too drunk to safely drive his vehicle when Starkey woke him up. Based on this evidence, the jury could draw a single reasonable inference that Zeiner was just as intoxicated—if not more intoxicated—during the time that he admittedly drove his vehicle from Strong City before pulling off the road. Such a finding does not amount to rank speculation by the jury, nor does it require impermissible inference stacking. Instead, the finding is a reasonable inference from the circumstantial evidence presented by the State at trial. Thus, we conclude there was sufficient evidence to support Zeiner's conviction under K.S.A. 2020 Supp. 8-1567(a)(3).

*The District Court's Decision to Not Define "Operate" in the Jury Instructions Does Not Require Reversal.*

10

Finally, Zeiner argues the district court did not fairly and accurately state the law when it denied his requested jury instruction defining "operate."

Appellate courts make a series of determinations when analyzing a jury instruction issue. This analysis includes whether the issue has been preserved; the instruction was legally appropriate; sufficient evidence, viewed in a light most favorable to the defendant, supports the requested instruction; and the error was harmless. *State v. Murrin*, 309 Kan. 385, 391-92, 435 P.3d 1126 (2019) (citing *State v. Mattox*, 305 Kan. 1015, 1020, 390 P.3d 514 [2017]). To be legally appropriate, an instruction must fairly and accurately state the applicable law. *Murrin*, 309 Kan. at 392 (citing *State v. McDaniel*, 306 Kan. 595, 615, 395 P.3d 429 [2017]). Harmlessness depends on whether the error infringes upon a constitutional or nonconstitutional right. If the former, there must be no reasonable possibility that the error affected the verdict. If the latter, there must be no reasonable probability that it affected the verdict. *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011).

Zeiner contends his request to define "operate" as "drive" was not simply legally appropriate but necessary. At trial, Deputy Starkey testified that while the SUV's headlights and radio did not suggest an attempt to drive, it did indicate an attempt to operate the vehicle. Zeiner's claim is that since this statement was both incorrect and could have misled the jury, the court's failure to include the requested language resulted in instructions that did not properly and fairly state the law. The State makes two arguments. First, the request was not legally appropriate because "operate" is broader than "drive." And second, any error was harmless based on the strength of the evidence and because Zeiner's attorney defined "operate" during closing arguments.

Zeiner preserved this issue by objecting at trial claiming that under *Darrow*, defining "operate" as "drive" would have been legally appropriate. See also *State v. Rodriguez*, 305 Kan. 1139, 1144, 390 P.3d 903 (2017) (Court of Appeals must follow

11

Kansas Supreme Court precedent absent an indication the Supreme Court intends to abandon a prior position). Zeiner goes on to claim that doing so would have been factually appropriate.

The court denied Zeiner's request to define "operate" because the pattern jury instructions did not include the definition. Although the pattern instructions should form the basis of an instruction, courts should modify an instruction to fit the facts of a particular case. *State v. Dixon*, 289 Kan. 46, Syl. ¶ 10, 209 P.3d 675 (2009).

Under the circumstances of this case, we agree with Zeiner that the district court erred by failing to give the requested instruction. The requested instruction was legally appropriate because in the context of K.S.A. 2020 Supp. 8-1567, "operate" means "drive." *Darrow*, 304 Kan. at 714. And the instruction was factually appropriate given Starkey's confusing testimony that while the SUV's headlights and radio did not suggest an attempt to drive, it did indicate an attempt to operate the vehicle.

But we agree with the State that any error in failing to give the requested instruction was harmless and did not affect the verdict. As we have discussed, resolution of this case does not turn on whether Zeiner attempted to operate or drive his vehicle after he pulled over to the side of the road. Zeiner freely admitted that he drove his vehicle from Strong City to the place where Starkey found him. Because this evidence was undisputed, there is no reasonable probability that the district court's failure to define "operate" as "drive" affected the jury's verdict.

Zeiner's conviction under K.S.A. 2020 Supp. 8-1567(a)(3) is affirmed. His conviction under K.S.A. 2020 Supp. 8-1567(a)(1) is reversed.

Affirmed in part and reversed in part.

12

* * *

ATCHESON, J., dissenting: The State presented insufficient evidence to convict Defendant Ty R. Zeiner of misdemeanor driving under the influence in a jury trial in Marion County District Court. I respectfully dissent from the majority's decision to affirm the conviction and would reverse and enter a judgment of acquittal. I also part ways with the majority on the jury instructions and would find the district court committed reversible error in this case by not defining the term "operating" to be synonymous with "driving" in a DUI prosecution. On that alternative ground, I would reverse Zeiner's conviction and remand for a new trial.

*Insufficiency of the Evidence*

In reviewing a challenge to the sufficiency of the evidence to support a conviction, appellate courts review the trial record in the best light for the State as the prevailing party and draw all reasonable inference in support of the guilty verdict. The courts do not reweigh the evidence and ask simply whether the evidence viewed that way could reasonably support the verdict. *State v. Jenkins*, 308 Kan. 545, Syl. ¶ 1, 422 P.3d 72 (2018); *State v. Butler*, 307 Kan. 831, 844-45, 416 P.3d 116 (2018); *State v. Pham*, 281 Kan. 1227, 1252, 136 P.3d 919 (2006). I've recited the standard to underscore my cognizance of and adherence to it.

To convict a defendant of DUI under K.S.A. 2020 Supp. 8-1567(a)(3), the State must prove beyond a reasonable doubt that he or she was "operating or attempting to operate" a motor vehicle "*while* . . . under the influence of alcohol to a degree that renders [him or her] incapable of safely driving a vehicle." (Emphasis added.) The Kansas Supreme Court has held that "operating" as used in K.S.A. 2020 Supp. 8-1567 means "driving." *State v. Darrow*, 304 Kan. 710, 714, 374 P.3d 673 (2016) ("[T]o 'operate' means to 'drive'; 'driving' requires movement of the vehicle; therefore, 'operating' requires

13

movement of the vehicle, and an 'attempt to operate' means to attempt to move the vehicle."). The crime, then, has two substantive elements: driving (or attempting to drive) and intoxication beyond the point of being able to drive safely. Those elements must exist simultaneously rather than merely sequentially. And that's the flaw in the State's evidence.[*]

[*]The State also charged Zeiner with DUI under K.S.A. 2020 Supp. 8-1567(a)(1) for driving or attempting to drive with a blood-alcohol level of .08 or higher. The jury convicted Zeiner of that alternative charge. On appeal, the State concedes the evidence was insufficient to support that conviction because the breath test results based on insufficient breath samples should not have been admitted or considered under K.S.A. 2020 Supp. 8-1567(a)(1). I join my colleagues in accepting the State's concession.

The jury found Zeiner not guilty of having an open container of an alcoholic beverage in a motor vehicle, a misdemeanor violation of K.S.A. 2020 Supp. 8-1599. The open container charge is not an issue in this appeal.

The trial record indisputably established Zeiner drove his SUV and parked it on the side of the gravel county road. So far as the evidence shows, however, Zeiner ably parked the vehicle on the shoulder; it was neither obstructing the roadway nor positioned at some odd angle—circumstances at least suggesting the driver may have been impaired. See *State v. Hazen*, 176 Kan. 594, 595, 272 P.2d 1117 (1954); *Hoover v. Kansas Dept. of Revenue*, No. 96,490, 2007 WL 2992427, at *2 (Kan. App. 2007) (unpublished opinion) (citing *Hazen*). Nobody saw Zeiner driving before then, let alone driving erratically.

Likewise, Zeiner did not drive or attempt to drive the SUV after he parked the vehicle. It was a cold, blustery November night (or early morning) when Jarret McLinden came upon the SUV with the headlights on, the engine running, and Zeiner asleep in the driver's seat. What McLinden saw did not constitute driving or attempting to drive. Zeiner was not somnambulistically trying to move the SUV. He had the engine and presumably the heater running to keep warm. By the time Sheriff's Deputy Larry Starkey arrived, Zeiner had turned off the engine, and the radio was on. Zeiner remained behind

14

the wheel—sleeping, in an alcohol induced stupor, or someplace in between. But Zeiner did nothing in Deputy Starkey's presence that amounted to an effort to drive the SUV.

In sum, the trial evidence included nothing even suggesting Zeiner drove or attempted to drive the SUV after he parked it. A conclusion otherwise depends on a legal mistake rather than reasoned inference.

The trial evidence, however, does support a reasoned inference that Zeiner was intoxicated when Deputy Starkey roused him. And I suppose the evidence supports a correlative inference that Zeiner would have been incapable of driving safely then. But that's not patently obvious. Zeiner did not perform two field sobriety tests as instructed and was less than forthcoming about how much he had to drink. By the same token, however, he could not be characterized as incoherent or falling-down drunk in the video recording of the encounter with Deputy Starkey.

But the evidence simply establishes that Zeiner sequentially drove and was later intoxicated. It could be Zeiner was sufficiently intoxicated that he was driving unsafely before he the parked the SUV. But the trial evidence is equally consistent with the conclusion Zeiner felt himself becoming intoxicated and pulled over at that point. Elevating one over the other would be an arbitrary choice, and that's insufficient to support a conviction. See *State v. Burnison*, 247 Kan. 19, 28, 795 P.2d 32 (1990); *State v. Williams*, 229 Kan. 646, 663-64, 630 P.2d 694 (1981); *State v. Judd*, No. 112,606, 2016 WL 2942294, at *2 (Kan. App. 2016) (unpublished opinion) ("[C]onvictions may not rest on speculation or surmise.").

The results of the breath tests administered to Zeiner between an hour and a half and two and a half hours after Deputy Starkey encountered him don't shift the evidence. The test results are no more than abstract factoids without any real evidentiary value on the charge for violating K.S.A. 2020 Supp. 8-1567(a)(3). No witness, let alone somebody

15

with claimed or demonstrable expertise, endeavored to explain what those test results might indicate about Zeiner's degree of intoxication when he parked the SUV. An extrapolation might have been a doubtful exercise because the evidence doesn't show how long Zeiner had been parked when Deputy Starkey arrived. Some attempt by the jurors to undertake that exercise would have been impermissible speculation.

Likewise, the beer bottles and bottle caps in the SUV don't clear things up. On appeal, the State pooh-poohs Zeiner's lawyer's suggestion to the jurors in closing argument that Zeiner may have parked and then began drinking those beers. It does seem implausible that Zeiner would have stopped about 3 miles from his home on a nasty night to start drinking beer in his SUV. But a strained closing argument from the defense doesn't legally fortify the insufficiency of the State's evidence. Much more likely, Zeiner began drinking those beers on the drive home from dinner in Emporia and a bar stop in Strong City. And having overserved himself, Zeiner decided prudence dictated pulling over. Maybe he continued to imbibe after he stopped. Zeiner did not testify in his own defense at trial, so we don't know how he would have explained the beer bottles. Again, all of that is just so much speculation. But the beer bottles do not provide an evidentiary foundation for a reasoned inference that Zeiner was too drunk to drive when he parked the SUV.

The majority relies on impermissible inference stacking to arrange the evidence in a way it says supports the conviction. In short, a fact-finder may not infer a circumstance based solely on a predicate circumstance or speculation rather than on evidence. See *State v. Rice*, 261 Kan. 567, 586, 932 P.2d 981 (1997) ("'Presumptions and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference.'") (quoting *State v. Doyle*, 201 Kan. 469, 488, 441 P.2d 846 [1968]); *Bradshaw v. Smith*, No. 113,922, 2016 WL 4413956, at *4 (Kan. App. 2016) (unpublished opinion) (impermissible inference stacking when "[t]he ultimate inference depends entirely on the accuracy of the precedent inference and is itself without any

16

direct or circumstantial support in the evidentiary record"); *State v. Gordon*, No. 105,845, 2012 WL 2620554, at *2 (Kan. App. 2012) (unpublished opinion) ("A reasonable inference may be properly drawn from a fact supported in the evidence. But another, more remote inference may not then be based on that inference alone.").

Here, the majority first points to Zeiner's general comportment when Deputy Starkey arrived and his poor performance on the field the sobriety tests. All of that furnished circumstantial evidence that Zeiner was then intoxicated to some degree, as I have agreed. That's a reasonable inference. Although debatable, I allow that those circumstances also may have supported a reasonable inference Zeiner could not have driven safety when Deputy Starkey arrived. But contrary to the majority's suggestion, those inferences cannot then support an inference that Zeiner was too drunk to drive when he pulled over and parked. That conclusion requires additional and wholly speculative determinations, i.e., guesses, as to when Zeiner parked and when he stopped drinking. So the majority's ultimate inferential conclusion that the evidence shows Zeiner was too drunk to drive when he parked depends on piling up inferences in a way the law does not permit—the result rests most immediately on speculative and conjectural inferences rather than inferences directly founded on the trial evidence.

Ultimately, the State presented evidence sufficient to establish that Zeiner drove and parked the SUV and that he was too drunk to drive when Deputy Starkey arrived some unknown time later. But the evidence does not support a reasoned conclusion he drove (or attempted to drive) and was too drunk at the same time. I, therefore, would reverse Zeiner's conviction and enter a judgment of acquittal. See *State v. Watt*, No. 121,266, 2020 WL 7413776, at *4 (Kan. App. 2020) (unpublished opinion) (relief on appeal when State has presented insufficient evidence to support defendant's conviction).

17

*Jury Instruction Error*

Turning to the jury instruction issue, Zeiner requested the district court inform the jurors that "operating" a motor vehicle means "driving" it. The district court declined to do so because the pattern jury instruction does not include such a definition and casts the elements in the statutory language of "operated" or "attempted to operate." See PIK Crim. 4th 66.010. The district court further concluded that jurors would necessarily understand that "operating" referred only to driving in a DUI prosecution. The district court gave an elements instruction that conformed to PIK Crim. 4th 66.010.

In assessing the failure to give a particular jury instruction, appellate courts sequentially examine a set of considerations: (1) reviewability based on preservation of the point at trial and jurisdiction; (2) legal appropriateness of the instruction; (3) factual support in the evidence for the instruction; and (4) harmlessness of any actual error. *State v. Blansett*, 309 Kan. 401, 408, 435 P.3d 1136 (2019); *State v. Brown*, 300 Kan. 542, 554-55, 331 P.3d 781 (2014); *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012). Some iterations collapse the second and third criteria into a single measure encompassing both legal and factual sufficiency. See *State v. McLinn*, 307 Kan. 307, 317-18, 409 P.3d 1 (2018).

Here, Zeiner requested the definition be included in the jury instructions and objected to the district court's refusal to do so. He, therefore, preserved the point for appellate review. Whether Zeiner operated his SUV while intoxicated was factually relevant. If the whole case were reduced to a single phrase, that would be it. So an instruction bearing on the meaning of "operate" or "operating" would have been factually appropriate. As I have already said, the court has unequivocally held that operating and attempting to operate a motor vehicle for purposes of K.S.A. 8-1567 mean driving or attempting to drive it. *Darrow*, 304 Kan. at 714. Zeiner's requested instruction, therefore, was legally appropriate.

18

District courts are encouraged to use the pattern instructions, since they are the studied product of a committee predominately of judges. But the instructions are not sacrosanct and may be tailored if necessary in a given case. See *State v. Green*, 55 Kan. App. 2d 595, Syl. ¶ 3, 419 P.3d 83 (2018). In the run of DUI cases, the omission of a definition of "operating" as "driving" in PIK Crim. 4th 66.010 would make no difference. In the prototypical case, a law enforcement officer pulls someone over for a traffic offense or poor driving indicative of possible impairment, e.g., excessive weaving in a traffic lane or traveling way below the speed limit for no apparent reason, and discovers indicia of intoxication. In those circumstances, the operation of the motor vehicle is undisputed and is plainly indistinguishable from driving.

But those circumstances are not the circumstances of this case. Moreover, by general definition, "operate" has a broader meaning than "drive." See Webster's New World College Dictionary 1025 (5th ed. 2014) (defining "operate" as "to put or keep in action" or "work" as, for example, "a machine"). Thus, in common usage, a person may "operate" a computer or food processor, but one would not speak of "driving" either of them. Motor vehicles have ancillary devices one could operate without driving. For example, a technologically challenged vehicle owner might say, "My car came with a GPS, but I don't know how to operate it." Some pickups or SUVs, often with off-road capabilities, may be outfitted with winches that would be operated without simultaneously driving the vehicles. So driving is operating, but in common parlance not all operating is necessarily driving.

And that makes a difference in this case. The jurors could have concluded that running the engine and headlights amounted to operating the SUV or even playing the radio might be. The evidence supported reasoned, if inferential, conclusions both that Zeiner was operating the SUV when McLinden first saw him parked on the shoulder and that he was intoxicated then based on Deputy Starkey's observations when he arrived a

19

short time later. But the conclusion would be a mistaken one under the law because it would rest on the commonly understood meaning of "operating" rather than the narrower legal definition equating the term with "driving" for purposes of K.S.A. 2020 Supp. 8-1567.

Contrary to the State's suggestion, Zeiner's lawyer's argument to the jurors that "operating" means "driving" doesn't fix the problem. The prosecutor offered no comparable comment in his argument that "operating" as an element of the DUI charges was limited to "driving." By the same token, however, he did not tell the jurors they could or should convict Zeiner simply because the SUV's engine was running or the radio was on. Nonetheless, consistent with the district court's instructions, the jurors could have come to that conclusion on their own during deliberations.

Moreover, arguments of lawyers do not carry anything approaching the same weight as the district court's instructions on the governing law. Here, the district court informed the jurors that they had a "duty" to follow the instructions because those instructions set forth "the law that applies to this case" and that their verdicts "must be founded entirely upon the evidence admitted and the law as given in these instructions." See PIK Crim. 4th 50.040; PIK Crim. 4th 68.010. The jurors were given written copies of the instructions to consider as they deliberated. Appellate courts presume jurors adhere to the instructions. *State v. Mattox*, 305 Kan. 1015, 1027, 390 P.3d 514 (2017).

The jurors easily could have concluded, based on the language of the elements instruction, that operating was *not* the same as driving and bore its broader common meaning. That kind of linguistic reconnoitering makes sense without some judicial guidance otherwise: If the governing law were limited to driving, the instructions—the district court's recitation of the relevant legal principles—would have referred to driving rather than operating.

20

In reviewing a preserved jury instruction challenge, appellate courts ask whether "there is a 'reasonable probability that the error . . . did affect the outcome of the trial in light of the entire record.'" *Plummer*, 295 Kan. at 168 (quoting *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 [2011]); see *State v. Salary*, 301 Kan. 586, 599, 343 P.3d 1165 (2015) (clarifying that *Ward* standard for nonconstitutional error governs district court's failure to give requested jury instruction on lesser included offense). As the party benefiting from the error, the State has the burden to demonstrate there was no such probability. *State v. McCullough*, 293 Kan. 970, Syl. ¶ 9, 270 P.3d 1142 (2012).

Without repeating all that I've already said, I necessarily conclude the failure to precisely define "operating" as limited to "driving" probably contributed to the guilty verdict on the DUI charge. The State has not shown otherwise. As I have explained, the evidence did not support a guilty verdict under K.S.A. 2020 Supp. 8-1567(a)(3) precisely because the State could not show Zeiner drove while he was intoxicated. The jurors, however, reasonably could have convicted on these facts if they deduced that sitting in the SUV with the engine running or the radio on amount to operating the vehicle. The deduction would have been consistent with the common meaning of the word "operate"—a meaning the district court did not preclude them from considering. But convicting Zeiner on that basis would be legally erroneous. And it was a real possibility here.

The majority short-circuits the harmlessness analysis with the assertion that Zeiner indisputable drove the SUV before he parked on the county road. Although that is quite true, the evidence Zeiner was then too drunk to drive is, at best, squishy and certainly cannot be characterized as compelling. So the jury may have and properly could have discarded that basis for finding Zeiner guilty. Just as the jury's general verdict of guilty precludes us from knowing for sure, it keeps the State from showing the instructional error likely played no part in that verdict.

21

I conclude there was reversible error without considering an exchange between Deputy Starkey and Zeiner's lawyer during cross-examination. If I were to weigh that testimony as well, the district court's failure to instruct the jurors that "operating" is confined to "driving" would undeniably be a material error in this case. The exchange unfolded this way:

"Q:    Okay. So you think the fact that the lights are on and the radio is playing suggests that Mr. Zeiner was attempting to drive the vehicle?

"A:    No. But he was attempting to operate the vehicle.

"Q:    Okay. We'll get to that in jury instructions. Okay?

"A:    Okay."

The questions and Deputy Starkey's answers create the impression that operating a motor vehicle is broader than driving one. We may presume that impression remained in the jurors' collective memory of the testimony when they deliberated.

But I discount the testimony because it looks like the result of a self-inflicted wound and lacks an obligatory contemporaneous objection to permit appellate review. The initial question seems to call for a legal opinion or conclusion from Deputy Starkey as to what may or may not constitute driving under K.S.A. 2020 Supp. 8-1567 and is almost certainly improper as a result. See *Puckett v. Mt. Carmel Regional Medical Center*, 290 Kan. 406, 444-45, 228 P.3d 1048 (2010). The lawyer effectively invited the erroneous legal opinion he got but didn't want. Moreover, the lawyer did not then object and move to strike Deputy Starkey's answer after the "no" as nonresponsive and as an incorrect statement of the law, although it was both. At that point, the district court could have sought to repair any damage from Deputy Starkey's testimony. See K.S.A. 60-404 (contemporaneous objection rule); *State v. Sprague*, 303 Kan. 418, 432-33, 362 P.3d 828

22

(2015) (appellate court will not review claim evidence erroneously admitted absent a contemporaneous trial objection). But having declined to seek relief then, Zeiner cannot cry foul now.

*Conclusion*

In short, I would in the first instance find Zeiner's DUI conviction under K.S.A. 2020 Supp. 8-1567(a)(3) to be insufficiently supported in the trial evidence, and I would reverse the conviction for that reason. Alternatively, the district court committed reversible error in this case by failing to instruct the jurors that "operating" as used in K.S.A. 2020 Supp. 8-1567 means "driving," and I would reverse the conviction and grant Zeiner a new trial for that reason.